652 So.2d 225 (1994)
Ex parte ST. VINCENT'S HOSPITAL.
(Re John Michael NEWTON, et al. v. ANESTHESIA SERVICES OF BIRMINGHAM, P.C., et al.).
1930537.
Supreme Court of Alabama.
September 2, 1994.
Rehearing Denied December 9, 1994.
*226 Mark W. Lee, Jr. of Parsons, Lee & Juliano, P.C., Birmingham, for petitioner.
Thomas W. Christian, Deborah Alley Smith and Peggy C. Hooker of Rives & Peterson, M. Clay Alspaugh and Ronald R. Crook of Hogan, Smith, Alspaugh, Samples & Pratt, P.C., Kimberly R. West, Birmingham, for respondents.
John W. Lowe of James, Lowe & Mobley, Haleyville, for amici curiae Alabama Hosp. Ass'n and Alabama Hosp. Ass'n Trust, in support of the petitioner.
Michael S. Burroughs of Phelps, Owens, Jenkins, Gibson & Fowler, Tuscaloosa, for amicus curiae DCH Regional Medical Center, in support of the petitioner.
Gary A. Parker of Norman, Fitzpatrick, Wood, Parker & Kendrick, Birmingham, for amicus curiae Bd. of Trustees of University of Alabama d/b/a The University of Alabama Hospitals and Clinics, in support of the petitioner.
Charles E. Sharp and Stephanie R. White of Sadler, Sullivan, Herring & Sharp, P.C., Birmingham, for amicus curiae Baptist Health System, Inc., in support of the petitioner.
Lyman H. Harris and R. Stan Morris of Harris, Evans, Berg, Morris & Rogers, P.C., Birmingham, for amicus curiae Medical Center East, in support of the petitioner.
Walter W. Bates and Ashley E. Watkins of Starnes & Atchison, Birmingham, for amicus curiae the Medical Ass'n of the State of Alabama, in support of the petitioner.
Robert L. Williams of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, for amicus curiae Alabama Ass'n for Health Care Quality, in support of the petitioner.
SHORES, Justice.
St. Vincent's Hospital petitions this Court for a writ of mandamus directing the trial judge to vacate his discovery order of December 3, 1993. We deny the writ.
The background of this case is as follows: Zeneca, Inc. (formerly Stuart Pharmaceuticals) and St. Vincent's are codefendants in a medical malpractice/products liability action. St. Vincent's filed a cross-claim against Zeneca, alleging that Zeneca had failed to adequately warn the hospital of the dangers associated with the use of the product "Hibiclens," a pre-operative scrub the plaintiff says got into his eyes during surgery and caused a chemical burn to his left cornea, and alleging breach of warranty.
Zeneca sought discovery of a "Dear Doctor" letter sent by Zeneca to St. Vincent's several months before the date of the plaintiff's injury, which warned the hospital that the product should not be used around the face and eyes. During depositions of hospital employees, it was found that the letter, dated October 16, 1987, was received by St. Vincent's and that the letter had been forwarded to the Infection Control Committee. St. Vincent's refused to allow the deponents to respond to questions regarding the action taken by the hospital in response to the letter, claiming that it was privileged pursuant to § 34-24-58 and § 22-21-8, Ala.Code 1975.
Zeneca then sought discovery of the letter and documents evidencing the actions taken by the hospital in response to it. On January 5, 1993, the trial judge ordered that St. Vincent's produce "all requested Infection control actions, minutes, records, file and procedures relating to Hibiclens warnings, use or `Dear Doctor' letters to the Court within thirty (30) days for an in camera inspection." After an in camera review of the documents the trial court entered the following order dated February 12, 1993:
"This Court has reviewed the Infection Control Committee Report. It is the opinion *227 of this Court that there can be no proper, legal or meaningful adjudication of this case, unless the parties are privy to the report of the Infection Control Committee (i.e., this Court, after reviewing said document, is amenable to a summary adjudication as to less than all parties'[;] however, movant would not have the knowledge requisite to seek summary judgment without the benefit of this report).
"Hence this Court Orders the portion of the report applicable to Hibiclensnot including `recommendation, action'to be produced to requesting party, ten days from date."
St. Vincent's responded by producing a one-page document with portions redacted. Zeneca filed a motion to compel. On July 13, 1993, the trial judge ordered St. Vincent's to produce "incident reports or committee reports regarding the use or precautions to use of Hibiclens." Again, on October 28, 1993, the court ordered that the letter and documents relating to the action taken by the hospital pertaining to the use of Hibiclens be produced. On November 3, 1993, St. Vincent's filed a notice of dismissal of its cross-claim and a motion to "reconsider," asserting that the documents were privileged as a part of its quality assurance functions. The court heard oral argument on the motion, and it entered this order dated December 3, 1993:
"ORDER

"Upon receipt and review between November 12, 1993, and this date, of further notice from Thomas W. Christian, codefendant, Stuart Pharmaceutical, this Court enters the following order:
"St. Vincent's Hospital's Motion to Reconsider... is denied.
"Defendant, St. Vincent's Hospital, has made known on the record upon motion, at hearings and by way of briefs filed, its position relative to the production of certain documents in question. This Court has repeatedly ruled on these matters, always with a view to respecting St. Vincent's grounds regarding privilege, confidentiality and nondiscoverability. However, Stuart Pharmaceutical [Zeneca, Inc.] cannot properly or effectively defend itself in this case without these materials (which have twice previously been ordered produced). Without the benefit of said materials, the posture of Stuart Pharmaceutical is such that it cannot effectively prepare its defense, cannot meaningfully move for summary judgment, cannot meaningfully resist a motion for summary judgment filed by plaintiff and, by virtue of its present condition, cannot even meaningfully explore settlement possibilities.
"Hence, this Court restates its practice of seeking to insure the ends envisioned by our Legislature in affording protection to medical providers as respects quality assurance and control; however, where these `protections' afforded a medical provider, concomitantly deprive a litigant of its ability to be afforded a full and fair trial by jury, the undersigned hereby declares that the intent of the legislature in its enactment of Title 22, Chapter 21, Section 8 and Title 34, Chapter 24, Section 58, Code of Alabama, was to enable described medical providers to consistently endeavor to improve, review, research, investigate and promulgate policies, practices and procedures which would continuously monitor and improve the level of care provided to hospital patients.
"To enforce or construe the aforementioned Code sections in such a manner as to deprive or deny Stuart Pharmaceutical its right or ability to demonstrate its own measures directed toward the improvement, review, research, investigation, and loss prevention regarding users of its products would patently amount to unequal treatment under the law.
"Wherefore, production is Ordered within 72 hours."
St. Vincent's asserts that the trial judge's order declares that §§ 22-21-8 and 34-24-58 are unconstitutional, as violating the plaintiff's right to trial by jury, and it seeks a writ of mandamus. We disagree. The trial judge merely observed that if the statutes were construed to preclude all discovery, the statute would "amount to unequal treatment under the law."
*228 A constitutional issue can be reached by this Court only when it has been raised by a party at the trial level and the attorney general has been served pursuant to § 6-6-227 and Rule 44, A.R.App.P. When a party challenging the constitutionality of a statute fails to serve the attorney general, the trial court has no jurisdiction to decide the constitutional claim, and any judgment regarding that claim is void. Stringer v. State ex rel. Valeska, 628 So.2d 686 (Ala.Civ. App.1993).
Thus, the only question before us is whether the trial judge abused his discretion in ordering the discovery. St. Vincent's seeks a writ of mandamus directing the trial judge to vacate his discovery order of December 3, 1993. We have described the proof necessary for the issuance of a writ of mandamus:
"[M]andamus is a drastic and extraordinary writ to be issued only where there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991).
The trial judge's discovery order comes as part of Zeneca's defense of this products liability action and as a result of St. Vincent's cross-claim against it in which the hospital asserted not only that Zeneca had failed to warn it concerning the dangers of Hibiclens, but also that if the company had adequately warned St. Vincent's that the product should not be used as a facial scrub, the hospital would have followed the warning. Thus, the cross-claim of St. Vincent's put at issue the matters that it claimed were privileged for purposes of discovery. St. Vincent's apparently recognized the inconsistency of this position and dismissed its cross-claim when it moved the court to "reconsider" the discovery order.
Although St. Vincent's has dropped its cross-claim against Zeneca, the discovery sought by Zeneca is critical to its defense. The changes in Zeneca's warnings regarding the product Hibiclens occurred in October 1987. The injury to the plaintiff Newton occurred in June 1988. Thus, it is important to Zeneca's defense to know what response St. Vincent's made to its warning. It also can be expected that St. Vincent's will attempt to shift any liability away from the hospital to the manufacturer of the product Hibiclens. Therefore, Zeneca would need to know the actions the hospital took after receiving the "Dear Doctor" letter.
St. Vincent's claims that this information is not subject to discovery because, St. Vincent's says, it is privileged pursuant to § 22-21-8 and § 34-24-58 Ala.Code 1975. Section 22-21-8 relates to confidentiality of accreditation and quality assurance credentialling materials:
"§ 22-21-8. Confidentiality of accreditation, quality assurance credentialling materials, etc.
"(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
"(b) All accreditation, quality assurance credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other *229 matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials."
Section 34-24-58 provides a privilege to committees of physicians or surgeons under certain circumstances:
§ 34-24-58. Decisions, opinions, etc., of utilization review committee privileged.
"(a) The decisions, opinions, actions and proceedings rendered, entered or acted upon in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist of any committee of physicians or surgeons, acting as a committee of the Medical Association of the state of Alabama, or any state, county or municipal medical association or society, or as a committee of any licensed hospital or clinic, or the medical staff thereof, undertaken or performed within the scope and function of such committee as legally defined herein shall be privileged, and no member thereof shall be liable for such decision, opinion, action or proceeding."
(Emphasis added.)
The general provisions governing discovery in the Alabama Rules of Civil Procedure are found in Rule 26(b)(1):
"(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
"(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
The broad scope of the discovery rules requires that they be liberally construed to provide the parties with information relevant to the issues in the litigation. Ex parte AMI West Alabama General Hosp., 582 So.2d 484 (Ala.1991). In Ex parte State Farm Fire & Casualty Co., 529 So.2d 975 (Ala.1988), this Court was confronted with a discovery issue in which two insurance companies sought an order to gain access to the juvenile proceedings of two insured minors who had been "adjudicated by the juvenile court as delinquent for the commission of the offense of third-degree arson." Id. at 976. The minors contended that the records were privileged under §§ 12-15-100 and -101. We determined that the right of confidentiality on behalf of a minor is not an absolute privilege, but a qualified one, and held that a "carefully tailored order of discovery" could protect the civil litigants' rights "without totally eroding the child's concomitant right of privacy." Id.
The trial judge determined that Zeneca could not defend itself without the documents sought, and he carefully tailored his discovery order, noting that the civil litigant's rights could not be preserved without such discovery. He then directed that certain documents, which he had previously examined in camera and had ordered produced on two separate occasions, be produced within 72 hours. Specifically, he ordered St. Vincent's to produce those sections of the Infection Control Committee's records that relate *230 to committee reports regarding the use or precautions as to the use of Hibiclens subsequent to its receipt of the "Dear Doctor" letter and up until the injury to the plaintiff.
The discovery sought by Zeneca is not privileged under either § 22-21-8 or § 34-24-58. The Infection Control Committee is a standing hospital committee, coordinated by Becky Harrison, a registered nurse. The burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on St. Vincent's. St. Vincent's has produced no evidence that the Infection Control Committee served as a utilization review committee and no evidence that a function of that committee was accreditation or quality assurance. The trial judge did not abuse his discretion in ordering that St. Vincent's to produce the records.
For the reasons stated above, the petition for the writ of mandamus is due to be denied.
WRIT DENIED.
ALMON, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, J., dissents.
HOUSTON, Justice (concurring specially).
In my opinion, Art. III, § 43, Ala. Const. of 1901, vested in this Court the power to make rules governing practice and procedure in all courts in the Judicial Department of government. (This was not the majority view of this Court before the ratification of Amendment 328 to the Constitution.) In my opinion, Art. III, § 44, prohibited the Legislative Department from exercising judicial powers, including the power to make rules governing practice and procedure in all courts. However, this Court's power to make rules governing practice and procedure in all courts was expressly limited by the last sentence in § 6.11, Amendment 328, which provides: "These rules may be changed by a general act of statewide application."
Therefore, Rule 26, A.R.Civ.P., which became effective on July 3, 1973, cannot trump a subsequent general act of statewide application, such as Ala.Code 1975, § 22-21-8 (enacted in 1981), or § 34-24-58 (enacted in 1976). Fortunately, in drafting Rule 26(b)(1), this Court recognized that certain matters were not discoverable, because the rule provides, in pertinent part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." (Emphasis added.)
In my opinion, if the matter sought to be discovered came within the ambit of § 22-21-8 or § 34-25-58, it would not be discoverable. Rule 26(b)(1); the last sentence of § 6.11, Amendment 328, Constitution.
Alabama Code 1975, §§ 22-21-8 and 34-25-58, apply to all hospitals within the state; therefore, the constitutional question of equal protection referred to, but not addressed, in all likelihood would not present a constitutional hurdle under the 14th Amendment to the United States Constitution. Likewise, the equal protection provisions in the Constitutions of Alabama of 1868 and 1875 ("Sec. 2. That all persons resident in this state ... are hereby declared citizens of the State of Alabama, possessing equal civil and political rights.") was specifically and intentionally deleted from the Constitution of Alabama of 1901. Official Proceedings of the Constitutional Convention of 1901, at 1622-34, 1640, 1642, 2254-60. Judicial error cannot create a phantom constitutional right for the judiciary to use to strike down a duly enacted statute of the legislature. Art. IV, § 44, Constitution.[1] There is no specific right to discovery *231 in a civil proceeding afforded to the citizens of Alabama by the Constitution of 1901.
I concur, because I do not believe that the discovery sought included matters that are privileged under the above-mentioned statutes.
MADDOX, Justice (dissenting).
As I viewed the question presented by the petition for mandamus, it was whether the trial court, in ordering the discovery of certain documents, correctly held that two State statutes regulating the discoverability and admissibility of the decisions, opinions, and actions of medical review committees were unconstitutional as violating the plaintiff's right to trial by jury.[2]
The majority says that the assertion by St. Vincent's that the trial judge's order declared the two statutes unconstitutional is incorrect, and that "[t]he trial judge merely observed that if the statutes were construed to preclude all discovery, the statute would `amount *232 to unequal treatment under the law.'" 652 So.2d at 227.
The majority avoids addressing the constitutional issue that I believe is squarely presented by the mandamus petition, by holding that the constitutional issue could be reached by this Court only when it is raised by a party at the trial level and the attorney general is served, and by holding that this procedure was not followed in this case.
The law stated in the opinion regarding how a constitutional question is raised and preserved is sound, but, it seems to me, is inapplicable here, because the trial court, acting on its own or upon the request of one of the parties, definitely based its ruling on the constitutionality of the two statutes. I quote the trial court's order to demonstrate this:
"Stuart Pharmaceuticals cannot properly or effectively defend itself in this case without these materials (which have twice previously been ordered produced). Without the benefit of said materials, the posture of Stuart Pharmaceuticals is such that it cannot effectively prepare its defense, cannot meaningfully move for summary judgment, cannot meaningfully resist a Motion for Summary Judgment filed by plaintiff and, by virtue of its present condition, cannot even meaningfully explore settlement possibilities.
"Hence, this Court restates its practice of seeking to ensure the ends envisioned by our Legislature in affording protection to medical providers as respects quality assurance and control; however, where these `protections' afforded a medical provider, concomitantly deprive a litigant of its ability to be afforded a full and fair trial by jury, the undersigned hereby declares that the intent of the legislature in its enactment of Title 22, Chapter 21, Section 8 and Title 34, Chapter 24, Section 58, Code of Alabama, was to enable described medical providers to consistently endeavor to improve, review, research, investigate and promulgate policies, practices and procedures which would continuously monitor and improve the level of care provided to hospital patients.

"To enforce or construe the aforementioned Code sections in such a manner as to deprive or deny Stuart Pharmaceuticals its right or ability to demonstrate its own measures directed toward the improvement, review, research, investigation and loss prevention regarding users of its products would patently amount to unequal treatment under the law."
(Emphasis added.)
As I read the order, it says that the documents being sought would be protected by the statutes in question, but that the documents must be produced, because the statutes are unconstitutional violations of Zeneca's rights to equal protection under the law and to a trial by jury. Consequently, I fail to see how the majority can uphold the order of the trial court without addressing the basic reason assigned by the trial judge for ordering the disclosure of the documents. As I read the order of the trial judge, he said that failure to order discovery here would "deprive a litigant of its ability to be afforded a full and fair trial by jury" and "would patently amount to unequal treatment under the law." It seems to me implicit in his order that he determined, after his in camera inspection, that the documents were within the scope of the statutory privileges, and that he ordered them produced only because he believed the statutory privileges to be unconstitutional. In other words, if the trial court had found that the documents were not protected from discovery by the statutes, there would have been no need for the trial court to hold that the statutes violated the constitution, as I think the trial court clearly held.
Based on the foregoing, I respectfully dissent. I could set out all the reasons why I think that the Legislature had the power to make the subject documents privileged, but the matter could possibly arise in an appeal if St. Vincent's suffers an adverse judgment and has previously preserved the issue.
NOTES
[1] The erroneous annotation under Art. I, § 1, Constitution of Alabama of 1901, as to the holding in Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939), which perhaps led to the "phantom constitutional right" has been changed at page 62 in the 1994 Cumulative Supplement to Volume 1, Code of Alabama 1975, to more correctly reflect the legal reasoning in Pickett v. Matthews, 238 Ala. at 545, 192 So. at 264, in which this Court stated:

"Sections 1, 6, 22, State Constitution; Amendment 14, Federal Constitution, U.S.C.A.:
"These taken together guarantee the equal protection of the laws, protect persons as to their inalienable rights; prohibit one from being deprived of his inalienable rights without due process; and prohibit irrevocable or exclusive grants of special privileges or immunities.
"It is claimed that by those principles the legislature cannot legalize a negligent injury to one's person or property, thereby changing the rule of duty not to cause damage by a negligent act, whether that duty is a creature of the common law or statute. It is thought that to do so deprives one of `life, liberty, or property' without due process (section 6, Constitution), because such rights are inalienable under section 1, and create a special privilege under section 22, and violate the equal protection of the Fourteenth Amendment."
[2] The trial court declared that §§ 22-21-8 and 34-24-58, Ala.Code 1975, amounted to an unconstitutional deprivation of equal protection of the laws and an unconstitutional deprivation of a right to a full and fair trial by jury.

Section 22-21-8, Ala.Code 1975, reads:
"Confidentiality of accreditation, quality assurance credentialling, etc.
"(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
"(b) All accreditation, quality assurance credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of accreditation, quality assurance or similar materials nor should any person involved in preparation, evaluation, or review of such materials be prevented from testifying as to matters within his knowledge, but the witness testifying should not be asked about any opinions or data given by him in preparation, evaluation, or review of accreditation, quality assurance or similar materials."
Section 34-24-58, Ala.Code 1975, reads:
"Decisions, opinions, etc., of utilization review committee privileged.
"(a) The decisions, opinions, actions and proceedings rendered, entered or acted upon in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist of any committee of physicians or surgeons, acting as a committee of the Medical Association of the state of Alabama, or any state, county or municipal medical association or society, or as a committee of any licensed hospital or clinic, or the medical staff thereof, undertaken or performed within the scope and function of such committee as legally defined herein shall be privileged, and no member thereof shall be liable for such decision, opinion, action or proceeding.
"(b) Within the words and meaning of this section, a committee shall include one formed or appointed as a utilization review committee, or similar committee, or committee of similar purpose, to evaluate or review the diagnosis or treatment of the performance of medical services which are performed with respect to private patients or under public medical programs of either state or federal design, with respect to any physical or mental disease, injury or ailment or to define, maintain or apply the professional or medical standards of the association, society, hospital, clinic or medical staff from, by or for which it was appointed."