280 So.2d 553

**BOARD OF TRUSTEES OF EMPLOYEES' RETIREMENT SYSTEM OF the CITY OF MONTGOMERY, Alabama, et al.**

v.

**Dorothy Carr TALLEY.**

**SC 116.**

Supreme Court of Alabama.

July 5, 1973.

Rehearing Denied Aug. 2, 1973.

Calvin M. Whitesell, Montgomery, for appellee.

Walter J. Knabe, Montgomery, for Board of Trustees of Employees' Retirement System of the City of Montgomery.

Joseph D. Phelps, Montgomery, for City of Montgomery.

HEFLIN, Chief Justice.

This is an appeal from a final decree entered by the Circuit Court of Montgomery County, in equity, declaring Paragraph 17 of Section 6 of Ordinance 12–65 of the City of Montgomery to be unconstitutional and awarding the appellee-complainant Mrs. Talley a gross sum of $7,466.76 and monthly payments of $118.52 for life.

The instant controversy involves the retirement system provided by the City of Montgomery by Ordinance Number 12–65 to provide retirement allowances for employees of the City under alternative options of equivalent actuarial value. The appellee-complainant's deceased husband, Mr. Talley, had elected to receive option number 2 which allowed Mr. Talley to draw modified retirement benefits and his named beneficiary, i.e., appellee-complainant Mrs. Talley, to receive a reduced retirement allowance for her life if the retired member died before Mrs. Talley. Mr. Talley designated February 1, 1966 as the effective date of his retirement on December 29, 1965 when he left the employment of the city. He had accrued leave from December 29, 1965 to February 1, 1966. He died on February 25, 1966, prior to receiving his first retirement check, which was due March 1, 1966.

The appellant-respondent Board of Trustees, acting pursuant to a clause found in paragraph 17, section 6, denied Mrs. Talley any benefits under the retirement system except a return of her late husband's contributions. The clause in question, which Mrs. Talley challenges as unconstitutional, follows a statement to the effect that any member may elect to receive a modified retirement allowance, as noted above, and reads as follows:

" . . . provided, however, that should he die within thirty days after retirement or within thirty days after the date of filing his optional election whichever is later, his optional election shall not be effective and he shall be considered to be a member in service

[meaning occupying an employment status as opposed to retirement status] at the time of his death, and the only benefit payable on his account shall be the return of contributions . . . ."

The Board of Trustees has raised a procedural problem which would be dealt with at the outset. The Attorney General was served with the original bill of complaint and all amendments thereto, save the final two, of which the Attorney General received notice merely by mail. The Board of Trustees question whether this is sufficient under Title 7, § 166, Code of Alabama 1940 (Recompiled 1958), which provides in pertinent part as follows:

"In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

The question then becomes whether the term "proceeding" as used in § 166 includes all amendments as well as the original bill of complaint. The original bill is clearly included within the term "proceeding," and merely mailing a copy of same to the Attorney General will not suffice, as § 166 explicitly provides that the Attorney General be "served" with a copy of the proceeding. Town of Warrior v. Blaylock, 271 Ala. 685, 127 So.2d 618 (1961); City of Gadsden v. Cartee, 279 Ala. 280, 184 So.2d 360 (1966).

Mrs. Talley argues that this court's holding in Ex parte Dothan-Houston County Airport Authority, 282 Ala. 316, 211 So.2d 451 (1968), dispenses with any supposed need for service of all amendments. However, in that case the Attorney General had acknowledged receipt of a copy of the bill of complaint and waived further service and the right to be heard. The record in the instant case reveals no such waiver.

The purpose of the provisions of Title 7, § 166 is to give notice of the filing of the bill, and protect the state and its citizens should the parties be indifferent to the outcome of the litigation. Masters v. Pruce, 290 Ala. 56, 274 So.2d 33 (1973); Ethington v. Wright, 66 Ariz. 382, 189 P. 2d 209 (1948); Cummings v. Shipp, 156 Tenn. 595, 3 S.W.2d 1062 (1928); Parr v. City of Seattle, 197 Wash. 53, 84 P.2d 375 (1938). This purpose has been served in this case, and the Attorney General has filed no answer or other pleadings in the case indicating that he wished to be heard, nor has he complained of the lack of service of the amendments. Under such circumstances this court can only conclude that there was certainly a substantial compliance with the provisions of Title 7, § 166, sufficient to answer the Board of Trustees' contention in this regard. Wichita County v. Robinson, 155 Tex. 1, 276 S. W.2d 509 (1954). See also Title 7, Section 349(2), Code of Alabama, 1940, as amended (Recompiled 1958–1971 Pocket Supplement).

Moving now to the issue presented by the merits of the instant case, it is to be noted that the final decree of the lower court contained the following language:

"From the testimony, the Court finds that this system was enacted for the benefit of the employees and was designed with that aim and objective. From the testimony of an expert actuary who works with and creates retirement systems for municipalities and others, and from all the other testimony received by the Court the provision of Paragraph 17, of Section 6, of the ordinance stating that should an employee '. . . die within thirty days after retirement or within thirty days after the date of filing his optional election, whichever is later,' can only be, and is an arbitrary, capricious exercise of power and unlawfully discriminated and therefore violates the Constitution of the State of Alabama and of the United States.

"This provision does not increase in any way the amount of contribution by the City of Montgomery. This provision does not affect in anywise the actual computation of benefits for an employee at the time the system was created. This provision did not in anywise affect the administration or computation by those administering the plan. The only possible purpose of this provision was to take away benefits already earned by those entitled to them and benefits for which both the employee and the City had made appropriate contributions to the system based on the benefits earned. This is an invidious and odious abuse of legislative power granted to a city."

Where evidence is heard orally before the trial court, the findings of the court have the effect of a jury's verdict and will not be disturbed on appeal, unless plainly erroneous, whether in law or equity. Patterson v. Brooks, 285 Ala. 349, 232 So.2d 598 (1970). There is, however, another presumption which has a field of operation in this case to the effect that any statute or ordinance is presumed to be constitutional, and the burden is upon the party asserting its unconstitutionality to show that it is not constitutional. Al Means, Inc. v. City of Montgomery, 268 Ala. 31, 104 So.2d 861 (1958); Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402 (1937). Proceeding under the assumption that the lower court indulged this presumption of constitutionality it must have concluded from the evidence adduced at trial that Mrs. Talley had successfully rebutted this presumption, and this finding as will be discussed later, must be affirmed, as there was sufficient evidence produced to warrant such finding, so that this court can not say that it is plainly erroneous.

In the instant case the constitutional challenge of the 30-day clause raises at least 3 related questions: Is the 30-day waiting period an arbitrary provision? Does the 30-day clause result in an unreasonable classification system? Does the

30-day clause deny equal protection under the law? While these three aspects of the central constitutional issue will be reviewed simultaneously, some separate treatment is necessary.

◼ The equal protection clause is violated by a classification system only when it is without any reasonable basis and is arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L. Ed. 369. This court has previously set forth the tests to be applied in determining the constitutionality of a classification system. The class

"(1) must be germane to the purpose of the law; (2) must bring within its influence all who are under the same conditions and apply equally to each person or member of the class, or each person or member who may become one of such class; (3) must not be so restricted and made to rest upon existing circumstances only as not to include proper additions to the number included within the class; (4) must be based on substantial distinctions which make one class different from another; and (5) must be reasonable under the facts of the case, and not oppressive and prohibitive."

State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843 (1951).

◼ Within these constitutional limits the governing authority should be given the widest possible latitude in enacting laws. *Pure Oil,* supra. This court must consider the fifth requirement mentioned above and the evidence of the case in determining whether the trial court erred in its finding of unconstitutionality.

The purpose of the 30-day clause, as indicated by the testimony of Charles A. Smith, a member of the Board of Trustees of the Employees' Retirement System of the City of Montgomery, was "for administrative purposes and to establish the indi-vidual as far as a retirement roll. He goes off the City payroll completely." It is to be noted, however, that in this particular case all administrative computations and entries had been made prior to the death of the appellee-complainant's husband and his death placed no administrative burden on the Board.

In any case, whether the former employee lived beyond the 30-day period or not has no effect on the amount he is to receive monetarily or the computation of that amount under the retirement system, because the employee has earned his retirement.

David Parsons, a consulting actuary, testified that the 30-day waiting period was an unusual provision. While there is a need for a waiting period, he stated, the period should precede the effective date of retirement, so that the employee's election will become effective as of the date of retirement, not 30 days later. Mr. Parsons concluded that there was no reason actuarily for a 30-day waiting period after the date of retirement. Thus the trial court could have found that as the retirement system is presently set up, i. e. with the 30-day clause, if an employee dies within the 30-day period, a gain or windfall would result to advantage of the City.

◼ The Board of Trustees did not call their own expert or the actuary who set up the retirement system to contradict any of Mr. Parsons' testimony. Under this state of the case the trial court could have concluded that any necessary waiting period could have and should have preceded the effective date of retirement; that such procedure of having a before-retirement-waiting-period would result in no great administrative burden to the Board of Trustees, and that such before-retirement-waiting-period was the only reasonable approach to this problem. The trial court had the right under the evidence to find that the procedure provided by the ordi-

**312**

nance was unduly oppressive and prohibitive, in view of the readily available alternative of a waiting period before, rather than after the retirement date.

 Even if the ordinance could be said to be within constitutional bounds as regards its classification system, the trial court was within its bounds of discretion in finding the waiting period system was arbitrary. Whether the ordinance was arbitrary turns on these inquiries: Whether, in view of the entire plan or system, taking into account its objective and beneficiaries, there was some genuine need for the 30-day clause; and, if so, whether the 30-day clause is a sound and fair way to meet this need. If these questions are fairly debatable, or, put another way, if reasonable men may differ as to these inquiries, the provision may not be said to be arbitrary. McCraney v. City of Leeds, 241 Ala. 198, 1 So.2d 894 (1941); Gilchrist Drug Co. v. City of Birmingham, 234 Ala. 204, 174 So. 609 (1937); Leary v. Adams, 226 Ala. 472, 147 So. 391 (1933); Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944). There must be some reasonable relation between the provision in question and the ends to be attained. Alabama State Federation of Labor v. McAdory, supra.

For the reasons mentioned above as to why the trial court was within its bounds of discretion in finding the classification was unreasonable, this court is constrained to the conclusion that the trial court was not plainly and palpably erroneous in its findings that the 30-day clause following the effective retirement date was not a sound and fair way to meet any need which may exist for such a provision, in view of the available alternative of a waiting period which would precede the retirement date and was therefore arbitrary since it took away earned benefits.

Affirmed.

MERRILL, HARWOOD, MADDOX and FAULKNER, JJ., concur.